**UNITED STATES of America**

**v.**

**Robert Henry TORQUATO,**
**Constance Torquato.**

**Crim. No. 69-67.**

United States District Court
W. D. Pennsylvania.

Dec. 30, 1969.

Richard L. Thornburgh, U. S. Atty., for the United States.

Robert Ivory, Pittsburgh, Pa., for defendant Constance Torquato.

A. C. Scales, Greensburg, Pa., for defendant Robert H. Torquato.

MEMORANDUM

ROSENBERG, District Judge.

Motions were here made by both defendants challenging compliance with jury selection procedures and to dismiss the indictment because of non-compliance in assembling a Grand Jury as provided by the Act of Congress. The defendants were indicted by a Grand Jury of 21 persons. The indictment was dated and filed February 27, 1969.

At the argument and hearing on the motions in open Court the Act of Congress, March 27, 1968, Pub.L. 90-274, 28 U.S.C. §§ 1861-1866, was introduced into evidence, as was the Plan adopted by the United States District Court for the Western District of Pennsylvania, and as the same was approved by the Circuit Panel.

Counsel for the defendants charge that while the Plan sets forth a voting population of 1,695,571, the basic figure should be 2,323,911. To support this contention counsel for the defendants introduced into evidence the United States Census of Population 1960 Pennsylvania General Population Characteristics, United States Department of Commerce, Bureau of Census Report. Counsel referred specifically to pages 40–230 through 40–247 to indicate that in 1960 the population of the over twenty-one year olds residing in the counties comprising the Pittsburgh division was 2,323,911 and the number residing in the counties comprising the Erie division was 323,554 for a total of 2,647,465 within the Western District of Pennsylvania. Counsel then attempts to persuade us that the difference in the figures as indicated by the 1960 Census Report and the figures utilized by the Western District indicates an irregularity and as such an obvious noncompliance with the statute.

The difficulty with counsel's arguments is that he did not show and candidly admitted that he could not show what happened during the period from 1960 through 1968, as to how many more persons became twenty-one years of age in that period; how many of the previously included persons became deceased; how many persons moved away or how many persons came into Pennsylvania, or other factual situations which might have been involved, and which would have caused demographic variations during the time interval in question. Furthermore, counsel has given no proof whatsoever of how many persons twenty-one years of age or older registered or failed to register as they may have been eligible in 1968.

The Act of Congress provides that the Plan adopted by each District shall

"(2) specify whether the names of prospective jurors shall be selected from the voter registration lists or the lists of actual voters of the political subdivisions within the district or division."

The Plan of the United States District Court for the Western District of Pennsylvania provides as follows:

"Voter registration lists represent a fair cross section of the community in the Western District of Pennsylvania. Accordingly, names of grand and petit jurors serving on or after the effective date of this Plan shall be selected at random from the voter registration lists of all of the counties within the relevant division."

The Act provides that the supervision of the staff engaged in the procuring of names of prospective jurors and their selection shall be under the Chief Judge of the District Court or such other Judge as may be designated by the Court. 28 U.S.C. § 1863(b). The Plan provides that the Clerk of Court and his staff shall be under the supervision of Judge John L. Miller or in his absence, Judge Rabe F. Marsh, and in their absence, the judge designated by the majority of the Court.

Since this matter was one in which all Judges of this Court participated and were made familiar with every step of the jury selection procedure, I can speak here as a matter of judicial knowledge. And since the Director of Elections for the Commonwealth of Pennsylvania in the office of the Secretary of the Commonwealth of Pennsylvania, by law, collates all the voters' registration statistics of the various counties and their election bureaus throughout the State, he is the legally constituted recipient and depository of such information.

Towards 1968 when the selection of jurors under the new statute was to begin, the Clerk of Court procured the figures from the Director of Elections through the Secretary of the Commonwealth and the detailed totals of the counties constituting the Western Dis-

trict of Pennsylvania and the total number of registered voters were as follows:

| | | |
|---|---|---|
| Allegheny | 777,290 | |
| Armstrong | 34,115 | |
| Beaver | 88,690 | |
| Bedford | 20,004 | |
| Blair | 54,330 | |
| Butler | 48,625 | |
| Cambria Clari | 88,291 | |
| Clarion | 16,310 | |
| Clearfield | 32,505 | |
| Fayette | 71,995 | |
| Greene | 16,678 | |
| Indiana | 32,450 | |
| Jefferson | 21,114 | |
| Lawrence | 47,194 | |
| Mercer | 54,298 | |
| Somerset | 34,946 | |
| Washington | 95,034 | |
| Westmoreland | 161,702 | |
| Pittsburgh | | 1,695,571 |
| Crawford | 31,661 | |
| Elk | 15,232 | |
| Erie | 113,064 | |
| McKean | 19,825 | |
| Forest | 2,174 | |
| Venango | 23,800 | |
| Warren | 18,237 | |
| Erie | | 223,993 |

These figures then formed officially the basis for the selection of the qualified jurors in accordance with the Act and the Plan. All this was done in strict compliance with the dictates of the Act and Plan and as such the Clerk, under the supervision of the District Judge, strictly complied with the law.

■ There was no evidentiary relationship presented here by the 1960 census which would enable one to conclude that the Plan in any way does not fulfill the purpose of the Act which provides that

"It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. * * *" 28 U.S.C. § 1861

To conclude as defendants' counsel would have me do, would disregard both the statute and the Plan and substitute therefor a speculative basis upon which to draw candidates in the selection of all jurors within the district.

■ The purpose of the Act "* * * is to provide improved judicial machinery for the selection, without discrimination, of Federal grand and petit juries. Its aim is to assure all litigants that potential jurors will be selected at random from a representative cross section of the community and that all qualified citizens will have the opportunity to be considered for jury service."

U.S.Code Congressional and Administrative News, 1968 Vol. 2, page 1792. "No litigant has the right to a jury that itself mirrors the make-up of the community. On any single jury some groups may be over-represented and others under-represented. But the technique of random selection tends to insure, according to the laws of probability, that distortion most often will be minor and will even out in the long run." U.S.Code Congressional and Administrative News, 1968, Vol. 2, page 1798.

It is clear that the Plan promulgated for the United States District Court for the Western District of Pennsylvania is designed to further the intent of Congress.

Accordingly, the motion of defendants' counsel to dismiss the indictment and all supplemental or supporting motions, will be denied.