Vallorie CLARK

v.

CITY OF BRIDGEPORT, and Alan Stak, Police Officer of the City of Bridgeport;

Richard RIZZOLI

v.

Reynaldo MUNIZ, Police Officer of the City of Bridgeport, and the City of Bridgeport;

Benjamin SIMMONS and Vivian Simmons

v.

John FORMICHELLA and Roger Falcone individually and in their official capacities as Police Officers of the City of Bridgeport.

Civ. Nos. B–83–514(TFGD), B–86–119(TFGD) and B–86–115(TFGD).

United States District Court, D. Connecticut.

Oct. 21, 1986.

Burton M. Weinstein, Richard J. Shapiro, Weinstein, Weiner & Shapiro, P.C., Lorraine W. Osborne, Goldman, Rosen & Willinger, Bridgeport, Conn., for plaintiffs.

Barbara B. Massaro, Raymond B. Rubens, Office of the City Atty., Bridgeport, Conn., for defendants.

## MEMORANDUM OF DECISION

DALY, Chief Judge.

The matter before the Court stems from the conduct of counsel for the City of Bridgeport ("City") during jury selection on October 7, 1986. While selecting juries in three civil rights cases brought under 42 U.S.C. § 1983, the defendants City and named police officers used their peremptory challenges to strike every black citizen otherwise available to serve on the juries selected in each of three cases. The Court on October 8, 1986, having heard from counsel in each case, struck the three juries selected and assessed court costs and, upon proper application, attorneys' fees against the City of Bridgeport. In so doing, the Court cited, *inter alia, Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and indicated a written opinion would follow. The Court hereby concludes that the assistant City attorney's conduct in exercising the defendants' peremptory challenges violates equal protection and issues the following ruling in accordance with and amplifying its October 8, 1986 ruling from the bench.

On October 7, 1986, the Court conducted general *voir dire* for purposes of jury selection in *Vallorie Clark v. City of Bridgeport, et al.,* B–83–514 ("*Clark*"), *Richard Rizzoli v. Reynaldo Muniz, et al.,* B–86–115 ("*Rizzoli*"), and *Benjamin Simmons, et al. v. John Formichella, et al.,* B–86–119 ("*Simmons*"). Following specific *voir dire* questions in *Clark* and challenges for cause, the courtroom deputy selected at random the names of sixteen prospective jurors, including three blacks, from which the petit jury and two alternates would be selected.[1] The parties then exercised their peremptory challenges with the defendants exercising their challenges to exclude all three of the blacks. A jury of six and two alternates were then selected for *Clark* which was scheduled to proceed to trial the following morning at 10:00 A.M.

Jury selection for *Rizzoli* next began with the same counsel as in *Clark,* at least for purposes of jury selection. Prior to arriving at a jury in *Rizzoli,* plaintiff's counsel, on the record at sidebar and in defense counsel's presence, indicated that in *Clark* the defendants had exercised their first three peremptory challenges to exclude the only three blacks among the six-

---

1. The courtroom deputy places the names of all those present for jury duty, except the names of those individuals who have been successfully challenged for cause or otherwise excused, in a wheel. She then randomly selects sixteen names from the wheel from which a trial jury and alternates will be selected.

teen prospective jurors whose names had been randomly drawn from the wheel. Counsel further indicated his client, Vallorie Clark, is black. The Court instructed counsel to file whatever he wished and stated, "[a]nd we'll deal with it before 10 o'clock [tomorrow]. We'll deal with it."

Following further *voir dire* and challenges for cause in *Rizzoli*, sixteen names, including that of one black, were selected from the wheel. In exercising the defendants' peremptory challenges, the assistant City attorney excluded the black prospective juror from jury service. The plaintiff in *Rizzoli* is white.

The Court then proceeded with jury selection in *Simmons*, a case in which the Court had, on June 16, 1986, dismissed the *Monell* count.[2] *See Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that a municipality may be held liable as a person under § 1983). Following further *voir dire* and challenges for cause, the names of sixteen prospective jurors, including four blacks, were randomly selected. The defendants used each and all of their four peremptory challenges to exclude the four blacks. Plaintiffs' counsel, apparently without knowledge of the gist of the earlier sidebar conference, indicated to the Court at sidebar that defendants had so exercised their challenges as to deprive her clients, both black, from having any blacks on the jury. Counsel for the City indicated there were other considerations for the defendants' peremptory challenge of one prospective black juror, Mrs. Costa, and the Court accepts that this one peremptory challenge might possibly be valid. With regard to

the other three challenges, however, counsel proffered that the case involves white police officers and the "city would probably be prejudiced if the people [they] decided not to have on the jury were in fact on the jury." Counsel further alluded to age as a cause of exclusion, but provided no other details. The Court instructed plaintiffs' counsel to file anything she wished in writing before trial commenced.

On October 8, 1986, counsel for each of the three cases and the jurors for *Clark* appeared, with trial in *Clark* scheduled to commence at 10:00 A.M. Out of the jury's presence, the Court, as it had indicated it would do on October 7, 1986, considered whether any of the three trials should go forward in light of the City's apparent systematic exclusion of black jurors from each of the three juries. The Court stated:

> And with an eye to the equal protection clause, both as it applies to the plaintiffs and to the jurors, and to my inherent supervisory powers, and after researching the law at some length yesterday and checking what actually did occur as a matter of record in the jury strikes, the exercise of peremptory challenges, I have determined that it is incumbent upon the City of Bridgeport through its counsel to articulate acceptable reasons for the exercise of its challenges.

Tr. at 2.

The Court then directed the parties' attention to such relevant caselaw as *King v. County of Nassau*, 581 F.Supp. 493 (E.D. N.Y.1984), *Swain v. Alabama*, 380 U.S. 202, 203–04, 85 S.Ct. 824, 826, 13 L.Ed.2d 759 (1965), and *Batson v. Kentucky*, ——

**2.** The assistant City attorney, in attempting to justify a peremptory challenge in *Simmons* based upon the City being named as a defendant, represented that he was unaware the *Monell* count against the City of Bridgeport had been dismissed. The Court finds this representation unfathomable in light of the circumstances surrounding the dismissal. The City attorney's office received a copy of the Court's ruling dismissing the *Monell* count. That ruling required plaintiff's counsel to file with the Court a letter outlining the various pleading requirements for a *Monell* count. The Court, by margin endorsement, did not accept plaintiff's first

letter in this regard, because there was no indication opposing counsel had been served. Opposing counsel, the City attorney's office, received a copy of this endorsement. Plaintiff's counsel then refiled the letter, indicating opposing counsel, the City attorney, had been served. Not only should the assistant City attorney have been aware from these circumstances that the *Monell* count is no longer in the case, but presumably any attorney representing a municipality and municipal employees would know on the eve of trial whether municipal liability is in fact in issue.

U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Court further explained the burden of proof necessary to establish purposeful discrimination through systematic exclusion of minorities, as enunciated in *Batson,* and stated:

> On the record here ... I find and conclude that the striking of eight out of eight available black jurors in the course of jury selection yesterday morning shifts the burden of proof to the defense to articulate a neutral explanation relating to the challenge of each of those jurors with regard to the cases in which they were challenged. The reasons stated on the record yesterday, and I have caused that record to be typed in pertinent part, may be adequate as to one of the jurors challenged in the *Simmons* case, but a party cannot justify its allegedly discriminatory exercise of challenges by claims of good faith, a lack of discriminatory motive, or that black jurors will be partial to the other party. And that's the law. I'll be glad to hear from you, sir.

Tr. at 4. The assistant City attorney responded that he was well aware of the oral motion made on October 7, 1986 pertaining to the defendants' peremptory challenges of blacks and proceeded to explain why such peremptory challenges were so exercised. In so doing, the assistant City attorney remarked "I personally have knowledge of what the feeling in the city, that permeates the city with its minority population, is and the municipal government and the police department." Tr. at 6. Although he may have attempted to set forth acceptable reasons for the City's and named defendants' peremptory challenges

of three of the black prospective jurors,[3] he continued:

> I prefer and thought that my client would get a much fairer trial if I could get people who came from surrounding circumstances and who had no feeling of kinship by race, color or creed.... [I]t looks like a pervasive pattern, I can't deny that we did it, I'm not going to sit here and say we did it, you know, but I'm sure if you had twenty more blacks on that panel, we would have had to accept black people. We would have to make a choice of which black people would we— would have given us a better and fairer trial. For example, if I had a black person who lived in Fairfield as compared to a black person who lived in Bridgeport on that panel, I probably would have knocked the black person from Bridgeport off and retained the one from Fairfield. Because the atmosphere that prevails in this city which I know exists, that's it. I have no other defense. I knocked them off. Yes, I did. I used my peremptory challenges, ... But it's so terribly unfair to pick on one segment of the population and tell us, oh, you were pervasive. It was designed. You knocked them all off.... I can't give you any other argument. We did it. It's obvious what we did.

Tr. at 11, 12, 13.

The assistant City attorney further stated that the prospective jurors were "knocked off" because he didn't think they would give him a fair trial, they were biased, and he thought they would show prejudice. Tr. at 13–14. The Court notes that the record during *voir dire* is devoid of any evidence

---

**3.** The assistant City attorney explained, for example, that he would prefer jurors who do not live in Bridgeport. One of the black prospective jurors the assistant City attorney excluded, however, resides in Stratford while the assistant City attorney failed to exclude in *Rizzoli* one white prospective juror who resides in Bridgeport. The Court, therefore, gives little weight to this explanation, especially since the assistant City attorney in *Rizolli* used only three of his peremptory challenges, stating that he "waived the fourth because [he] felt all the other jurors were proper." Tr. at 12.

The assistant City attorney also attempted an explanation for his peremptory challenge of Mr. Jenkins, also black, stating that Mr. Jenkins belonged to an international organization of police chiefs. The Court discredits this explanation, as well, absent some reasoning as to why a lawyer representing law enforcement officials would not want a prospective juror associated with a law enforcement organization on the jury. It is clear from the record as a whole that the assistant City attorney's primary motivation for striking Mr. Jenkins was that he is black.

which might support such statements. When asked whether he had empirical data, he responded, "I don't have any empirical data. All I can tell you is I trust my instincts." [4] Tr. at 16. The assistant City attorney also cited in support of the challenges the fact that black plaintiffs are involved. Tr. at 14.

The Court allowed the City attorney following plaintiffs' counsels' remarks another opportunity to speak at which time he stated:

> [I]f I had a choice between a white juror and a black juror under the facts of these cases, I'm going to take a white juror. That's what I'm saying.... [W]hy should I put my city and my defendants at the mercy of the people in my opinion who make the most civil rights claims, at least in my experience.... But I've been honest with your Honor. I told you exactly why I kept those people off the jury.

Tr. at 27–29.

The Court, having undertaken the difficult task of determining invidious intent in light of the record as a whole and the relevant caselaw set forth below, finds that the defendants exercised their peremptory challenges to exclude at least seven of the eight black prospective jurors from jury service simply because they are black. As stated in open court on October 8, 1986, such exercise of one's peremptory challenges is constitutionally impermissible.

The peremptory challenge, characterized long ago by Coke and Blackstone as a necessary component of a trial by jury in both civil and criminal cases, *Carr v. Watts,* 597 F.2d 830, 831 n. 1 (2d Cir.1979) (per curiam), *citing Lewis v. United States,* 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892); *Pointer v. United States,* 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894), has enjoyed a sacrosanct existence. The peremptory is designed to eliminate "extremes of partiality on both sides" without incurring a prospective juror's hostility and to "assure the parties that the jurors before whom they try the case will decide on the basis of evidence placed before them and not otherwise." *Swain,* 380 U.S. at 219, 85 S.Ct. at 835. Because the right to exercise the peremptory is an arbitrary and capricious one left practically to the unfettered discretion of the litigator, *Lewis,* 146 U.S. at 378, 13 S.Ct. at 139, it permits "those to discriminate who are of a mind to discriminate." *Batson,* 106 S.Ct. at 1723, *quoting Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953). The Court concurs with the assistant City attorney who concedes that a litigator, when exercising his peremptory challenges, cannot "peer into those [jurors'] minds". Tr. at 11. Neither can he, however, peer solely at the color of their skin. In order for the peremptory to serve its just and proper end, "justice must satisfy the appearance of justice." *Swain,* 380 U.S. at 219, 85 S.Ct. at 835, *quoting In Re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). The arbitrary right of the peremptory is not absolute and cannot be allowed to facilitate the apparent unjust end of the assistant City attorney in these three cases.

■ Although one is not entitled to a trial of his cause before a petit jury composed in whole or in part of persons of his own race, *see, e.g., Batson,* 106 S.Ct. at 1716; *Strauder v. West Virginia,* 100 U.S. 303, 10 Otto 303, 25 L.Ed. 664 (1880), the prohibition against a State's purposeful or deliberate denial to a black of the opportunity to serve on a jury because of his race is axiomatic and guaranteed by the Equal Protection clause of the fourteenth amendment. *Batson,* 106 S.Ct. at 1717; *Swain,* 380 U.S. at 203–04. The guarantee that the State will not utilize discriminatory criteria in the selection of jurors is one to be enjoyed by criminal defendant and prospective juror alike. The protection also applies to the entire system of justice which, once scathed by the discrimination present at bar, finds its integrity and public trust undermined. *Batson,* 106 S.Ct. at 1717–18.

---

**4.** *See Batson v. Kentucky,* 106 S.Ct. 1712, 1728 (Marshall, J. concurring) ("Yet 'seat-of-the-pants instincts' may often be just another term for racial prejudice.").

It appears, at least from the cases reported, that when protection from discrimination in the jury selection process has been sought by an individual party, he almost invariably has been a criminal defendant.[5] *See, e.g., Batson*, 106 S.Ct. at 1716 & n. 3. That factor, however, does not foreclose the application of *Batson* and the constitutional mandate for equal protection in civil cases where, as here, there is state action involved in the exercise of peremptory challenges.[6] At least one court within the Second Circuit has held that *Swain* "is applicable to both criminal and civil cases, regardless of whether the peremptory challenge is made by a governmental entity or a private party." *King v. County of Nassau*, 581 F.Supp. 493 (E.D.N.Y.1984). Although *Swain* has been modified by *Batson* at least with regard to the evidentiary burden placed on a party claiming an equal protection violation through the State's use of peremptory challenges, *Batson*, 106 S.Ct. at 1714, there simply is no reason why the equal protection analysis now employed in *Batson* should not apply with equal force to the instant case.

The Supreme Court, in evaluating the propriety of the systematic exclusion of daily wage earners from a venire, stated:

> The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community.

*Thiel v. Southern Pacific Co.*, 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181 (1946). While this Court does not decide the instant case based on a fair cross-section requirement, but rather upon the Equal Protection clause, the Supreme Court further indicated in the context of both civil and criminal cases that

> those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury.

*Id.* at 220, 66 S.Ct. at 985. Indeed, "since the color of a man's skin is unrelated to his fitness as a juror, [blacks] cannot be excluded from jury service because they are [black]." *Id.* at 227, 66 S.Ct. at 989 (Frankfurter, J., dissenting). Although the *Thiel* court was confronted with systematic exclusion by court officials, the Supreme Court has clearly indicated that while past decisions of the Court "have been concerned largely with discrimination during selection of the venire, the principles announced there also forbid discrimination on account of race in selection of the petit jury." *Batson*, 106 S.Ct. at 1718. This Court does not hesitate, then, to require herein that the parties themselves conform their conduct so as not to create class distinctions and discriminations through their exercise of peremptory challenges during selection of the petit jury.

Congress, as well, has indicated that the jury selection process in both civil and criminal cases is to be colorblind. 28 U.S.C. § 1862 provides:

> No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States or in the Court of International Trade on account

---

5. One civil case involving the alleged discriminatory use of peremptories, *Esposito v. Buonome, et. al.*, 642 F.Supp. 760, has come to the attention of the Court. There Circuit Judge Meskill, sitting by designation in this district, found that the exclusion of two black veniremen in a civil rights case from the jury panel was not unconstitutional. In *dicta* the Court indicated that *Batson* equal protection analysis should not apply to civil cases where a party has initiated judicial process of his own free will. In that case, however, the plaintiff was neither a member of a cognizable group that was victimized by the alleged discrimination, nor was the burden with regard to a *prima facie* case met by the plaintiff.

6. That the assistant City attorney has taken official action acting in his official capacity in the representation of the City of Bridgeport and or its employees cannot be disputed. *See Columbus Bd. of Ed. v. Pencik*, 443 U.S. 449, 457 n. 5, 99 S.Ct. 2941, 2946 n. 5, 61 L.Ed.2d 666 (1979).

of race, color, religion, sex, national origin, or economic status.

The purpose of the Act

> is to provide improved judicial machinery for the selection, without discrimination, of Federal grand and petit juries. Its aim is to assure all litigants that potential jurors will be selected at random from a representative cross section of the community and that all qualified citizens will have the opportunity to be considered for jury service.

H.R.REP. NO. 1076, 90th Cong., 2d Sess., *reprinted in* 1968 U.S. CODE CONG. & ADMIN. NEWS 1792, *quoted in United States v. Torquato,* 308 F.Supp. 288, 290–91 (W.D.Pa.1969).

Although 28 U.S.C. § 1862 is inapplicable to the instant case, in that it deals with the judicial machinery used to arrive at the venire, the statute evinces a clear Congressional policy that all citizens shall have the right to be considered for jury service and all litigants shall have the right to have these citizens so considered without regard to their race. These rights begin with the court officials' selection of the venire and continue through the litigants' selection of the petit jury. No reason appears why such rights should not be available in both civil and criminal cases, and especially where, as here, there has been state action to exclude through the use of peremptory challenges every black prospective juror available for jury service in each of the three cases.

> Misuse of the peremptory challenge to exclude black jurors has become both common and flagrant.... Yet the Equal Protection Clause prohibits a State from taking any action based on crude, inaccurate racial stereotypes—even an action

that does not serve the State's interests. Exclusion of blacks from a jury, solely because of race, can no more be justified by a belief that blacks are less likely than whites to consider fairly or sympathetically the State's case against a black [litigant] than it can be justified by the notion that blacks lack the "intelligence, experience, or moral integrity" to be entrusted with that role.

*Batson,* 106 S.Ct. at 1726, 1727 (Marshall, J., concurring) (citations omitted), *quoting Neal v. Delaware,* 103 U.S. 370, 397, 13 Otto 370, 397, 26 L.Ed. 567 (1881). In light of the foregoing, the Court holds that the equal protection analysis enunciated in *Batson* pertaining to use of peremptory challenges applies not only to criminal cases, but also to civil cases in which there has been state action.[7]

■ While the exercise of peremptories by the State *qua* litigant is presumed to be motivated toward the end of a fair trial, the presumption dissipates where, as here, there appears as a result of their exercise a pervasive pattern of systematic exclusion of blacks from the jury. *Swain,* 380 U.S. at 222, 85 S.Ct. at 837. In *Batson* the Supreme Court redefined the evidentiary requirements to prove that the exercise of peremptories in the selection of a particular jury violates the Equal Protection clause. As in any equal protection case the burden rests with the moving party to establish a *prima facie* case of the State's racially discriminating purpose. *Batson,* 106 S.Ct. at 1721, *citing Whitus v. Georgia,* 385 U.S. 545, 550, 87 S.Ct. 643, 646, 17 L.Ed.2d 599 (1967). To establish such a *prima facie* case, the moving party must show that he is a member of a cognizable racial group, and that the assistant City attorney "has

---

**7.** At least one state court under its state constitution has addressed the propriety in civil cases of exercising peremptory challenges to exclude prospective jurors based solely upon group bias. In *Holley v. J & S Sweeping Co.,* 143 Cal.App.3d 588, 192 Cal.Rptr. 74 (Cal.Ct.App. 1st Div.1983), a civil matter involving a black plaintiff, the defendant exercised three peremptory challenges to exclude three of four black prospective jurors. The fourth black prospective juror was excused for cause, leaving an all white jury.

The Court wrote that "juries in both [civil and criminal] proceedings perform the same important function of ultimate fact finders under the same constitutional guarantee." *Id.* at 592, 192 Cal.Rptr. at 77. The Court went on to hold that the "systematic exclusion of jurors at any stage of the selection process in either criminal or civil proceedings solely on the basis of group bias is constitutionally impermissible." *Id.* at 593, 192 Cal.Rptr. 77.

exercised peremptory challenges to remove from the venire members of the [moving party's] race." The movant must also show that "these facts and any other relevant circumstances raise an inference that the [assistant City attorney exercised his peremptories] to exclude the veniremen from the jury on account of their race." *Batson,* 106 S.Ct. at 1723.

A finding of the invidious intent of the City may be based on direct or circumstantial evidence, *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977), the latter of which may include proof of disproportionate impact. *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976). "[T]otal or seriously disproportionate exclusion of Negroes from jury venires" has been held to be such an " 'unequal application of the law ... as to show intentional discrimination.' " *Batson,* 106 S.Ct. at 1721 (citations omitted). An inference of discriminatory purpose in the exclusion of blacks from a jury may be gleaned from a totality of the relevant facts. *Batson,* 106 S.Ct. at 1721. Ultimately, the finding of a *prima facie* case is a finding of fact subject to the experience of the trial judge. *Batson,* 106 S.Ct. at 1723. When examining the events surrounding a particular *voir dire,* the trial judge may find invidious intent in a "pattern" of strikes against blacks or in the questions asked of the jurors by counsel for the State. *Batson,* 106 S.Ct. at 1723.

■ Through the series of jury selections in *Clark, Simmons,* and *Rizzoli,* defendants employed their peremptories to exclude each black whose name was drawn from the wheel, resulting in an all white jury in each of the three cases. Such exclusion may in and of itself establish a *prima facie* case of discrimination in the selection process. *See Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Avery v. Georgia,* 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953); *Whitus,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599. In *Clark* and *Simmons,* each selection process alone supports a finding of a *prima*

*facie* case. Such finding is buttressed when the jury selection by the defendants of October 7, 1986 is viewed in its totality. *See Washington v. Davis,* 426 U.S. at 239–42, 96 S.Ct. at 2047–48. Although one is hard-pressed to find a *prima facie* case on the basis of the exclusion of the one black in *Rizzoli,* the totality of circumstances and inferences arising from this particular series of jury selections, and the inherent discriminatory nature of the use of the peremptory, provide sufficient basis for such a finding. *Id.* ; *see Batson,* 106 S.Ct. at 1722 (a single invidiously discriminatory governmental act may form the basis for a violation of equal protection).

A violation of the Equal Protection clause is also more problematic in *Rizzoli* because the plaintiff, a white person, is not a member of any cognizable group victimized by discrimination. *See Castaneda,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498. This fact, however, does not preclude application of the same analysis and evidentiary burden. The Supreme Court has explained that denial of participation in jury service on account of race unconstitutionally discriminates against the excluded juror. *Batson,* 106 S.Ct. at 1713. Although these prospective jurors have not moved this Court to protect that right, the Court finds it within its inherent supervisory power to protect the right of the excluded jurors, as well as to preserve the integrity of this Court and the judicial process. *See Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (invocation of supervisory power to protect the integrity of juries); *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) (exercise of supervisory power to protect against prejudice turns on the facts of each case); *Thiel,* 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (use of supervisory power to prevent systematic exclusion of distinctive groups from jury service in civil cases); *United States v. Ramirez,* 710 F.2d 535, 541 (9th Cir.1983) (supervisory power should be utilized to preserve the integrity of the judicial process).

Since a *prima facie* case has been found, the burden shifts to the assistant City attorney to come forward with neutral explanations for challenging the black jurors. *Batson*, 106 S.Ct. at 1723. Although such explanations need not rise to the level required for a challenge for cause, he must articulate explanations related to the particular case to be tried. *Id.* at 1723. It simply does not suffice for counsel to affirm his good intentions on behalf of his clients. And it is inexcusable to rely on the "intuitive judgment" that because of the shared race of the venirepersons and plaintiffs, and the perceived poor rapport between the black community and the defendants in these cases, that the excluded jurors would fail to rise to their sworn duty of deciding the case only on the evidence before them. Tolerance of such poor "judgment" only promotes "a stimulant to that race prejudice which is an impediment to securing black citizens that equal justice which the law aims to secure to all others." *Batson*, 106 S.Ct. at 1718, *quoting Strauder*, 100 U.S. at 308, 10 Otto at 308. For the defendants to prevail in this matter, they would have to present a "clear and reasonably specific" explanation of their "legitimate reasons" for employing the peremptories as they did. *Batson*, 106 S.Ct. at 1724 n. 20 (citations omitted). The Court concludes that they have not.

For the most part, counsel for defendants conceded his purpose for employing the peremptories which the Court finds was discriminatory. In two instances, however, counsel proffered explanations for his challenges. The striking of Mrs. Costa may be acceptable in *Simmons*, because the incident complained of occurred within the housing project in which she resides. Yet the exclusion of Mr. Jenkins based upon his affiliation with an international organization of police chiefs and the exclusion of Mrs. Costa in *Rizzoli* are found to be merely pretextual and not nearly sufficient to survive this Court's inquiry. To the extent that counsel attempted to articulate any other explanations, *see supra* notes 2-3, those too are unpersuasive. Counsel stated that if he had a choice between a white juror and a black juror under the facts of these cases, he would take a white juror. Tr. at 27. The Court concludes that counsel, through his peremptory challenges, exercised this choice in precisely the repugnant manner precluded by the fourteenth amendment's Equal Protection clause. Accordingly, the juries are dismissed. The above-captioned cases shall be placed on this Court's November, 1986 calendar. Court costs and attorneys' fees, upon a proper application to be filed by October 28, 1986, are assessed against the defendants.

It is SO ORDERED.