This appeal results from a jury verdict finding unlawful arrest and imprisonment on the part of defendant, Jim Downing, and awarding plaintiff, Robert Parker, $50.00 in damages.
The facts forming the basis of Parker's complaint are as follows: Downing, a University of Alabama at Birmingham (UAB) police officer, detained Parker, a UAB medical student, for a period of time after Parker was found in the storeroom of a UAB building. This particular building was located several blocks from the medical school facilities.
Parker, who had keys to the building, testified he had unrestricted permission to use the room for studying. In the storeroom Downing found personal items belonging to Parker which indicated Parker was living there. The evidence presented to the jury was in sharp dispute both as to the type of permission obtained by Parker and the events which occurred that night; specifically, there was conflict concerning how long Parker was detained, whether he was arrested, and to what extent his personal items were searched and/or seized and retained by Downing.
Parker's complaint alleged false arrest and imprisonment, as well as a violation of his fourth and fourteenth amendment rights. Downing requested judgment on the pleadings, directed verdicts, and judgment notwithstanding the verdict (jnov) on the ground that he had sovereign immunity. Each motion was denied by the trial court.
When the jury venire was struck, Downing's counsel used all his peremptory challenges to strike black jurors. Parker's counsel, citing Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), requested a hearing on Downing's use of all peremptory challenges in this manner. The court denied his request stating Batson applied only in the criminal context.
The case then proceeded to trial, and the jury awarded Parker $50.00 damages. Parker's counsel requested an attorney's fee under 42 U.S.C.A. § 1988 (West 1981), which the court denied.
Parker appeals, maintaining the trial court erred in failing to conduct a Batson hearing and in failing to award an attorney's fee. Downing cross-appeals, alleging the court erred in not granting his motion for judgment on the pleadings, directed verdict, and jnov.
We first address Parker's contention that the court erred in not conducting a Batson hearing. Specifically, the court inBatson held that "the State's privilege to strike individual jurors through peremptory challenges is subject to the commands of the Equal Protection Clause," and the criminal defendant may establish his prima facie case for purposeful racial discrimination solely by evidence of the prosecutor's use of his peremptory challenges to remove members of defendant's race from the jury venire. Batson. In short, Batson overruled a portion of the court's earlier decision of Swain v. Alabama,380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), and drastically reduced the defendant's burden when establishing a prima facie case for purposeful discrimination.
Following Batson, our supreme court took the opportunity to apply this new standard in Ex parte Jackson, 516 So.2d 768
(Ala. 1986). However, Jackson was also a criminal case.
The dispositive issue for us in this case is whether theBatson equal protection guarantee extends into the civil arena. We do note that although this very issue has been presented to our supreme court they declined to confront it. Stallworth v.Board of School Commissioners, 507 So.2d 1323 (Ala. 1987). Our research further indicates that the issue has been addressed by very few federal and state courts and that the *Page 1182 
majority of those courts distinguished their cases on factual grounds and failed to apply Batson.
However, in the case of Clark v. City of Bridgeport,645 F. Supp. 890 (D.Conn. 1986), a United States District Court did apply the principles of Batson to a civil case. Clark involved a civil rights action against police officers and is somewhat similar to the case currently before us.
In Clark, the city attorney representing the defendant city and its police officers was found to have violated the fourteenth amendment equal protection clause through the use of peremptory challenges to strike prospective black jurors in a civil case. The court addressed the application of Batson to a civil case and found that simply because Batson was decided in the context of a criminal trial did not prevent its application "and the constitutional mandate for equal protection in civil cases where, as here, there is state action involved in theexercise of peremptory challenges." Clark.
In Clark, the action of the city attorney striking black prospective jurors constituted the state action required for an equal protection violation. However, in the case presently before us, the record fails to indicate that trial counsel for Downing was acting as an official of the city or state. Because the only authority for extending Batson into the civil arena mandates that there be state action involved in the use of the peremptory challenges, Clark, and there is no state action involved when private counsel exercises peremptory challenges, we decline to extend Batson to this particular case.
We do recognize that Downing, a UAB policeman, was being sued in his official capacity as a police officer, and, further, that he was statutorily empowered in that position. § 16-47-11, Code 1975. Additionally, although Downing's detention of Parker was alleged to be a tortious exercise of these police duties, that does not prevent those acts from being "under color of state law." Baldwin v. Morgan, 251 F.2d 780 (5th Cir. 1958). However, the state action that triggers Batson must be found in the context of the exercise of the peremptory challenge. No such state action exists. The court's denial, therefore, of Parker's request for a Batson hearing was not in error.
Parker also contends that the court committed error in failing to award him an attorney's fee pursuant to42 U.S.C.A. § 1988 (West 1981) when he prevailed in his § 1983 civil rights action. The purpose of the act is to allow a party with civil rights grievances effective access to the courts. Hensley v.Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In short, an award of an attorney's fee assures access to the courts by such a party. Hensley. This section provides:
 "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."
42 U.S.C.A. § 1988 (West 1981).
Downing's cross-appeal, however, alleges, among other things, that Parker failed to properly assert a section 1983 claim, and, therefore, that the civil rights action and the corresponding section 1988 request for an attorney's fee should have been dismissed. Thus, before addressing whether Parker's section 1988 attorney's fee request was properly denied, we examine whether the section 1983 claim was sufficient.
In Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920,64 L.Ed.2d 572 (1980), the Supreme Court noted:
 "By the plain terms of § 1983, two — and only two — allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law."
Further, in examining the sufficiency of a section 1983 complaint, the general rule is *Page 1183 
that the allegations of civil rights violations are liberally construed. Rubin v. O'Koren, 621 F.2d 114 (5th Cir. 1980).
We have examined Parker's complaint and note the following. He alleged a deprivation of his fourth and fourteenth amendment rights. Further, he asserted that these rights were violated by Downing while acting as a UAB police officer. In light ofGomez and the liberality afforded section 1983 complaints, we find the civil rights violation was adequately pleaded.
We now turn to the court's denial of the section 1988 request for an attorney's fee. Although section 1988 provides that an award of an attorney's fee is discretionary with the court, inHensley, supra, the United States Supreme Court said that a prevailing party should ordinarily be awarded an attorney's fee absent special circumstances which would render such an award unjust. Alabama has had occasion to apply this rule of law limiting the discretion of the court to deny an attorney's fee in Canterbury Nursing Home, Inc. v. Alabama State HealthPlanning Development Agency, 425 So.2d 1103 (Ala. 1983). In short, Canterbury recognized that, absent special circumstances making the fee award unjust, the prevailing party is entitled to an attorney's fee.
In the case before us, the trial court simply denied the attorney fee request. The order provided: "The Court hereby denies the order of attorney fees in the above-styled case." Consequently, we have no findings to indicate the existence of special circumstances and nothing to review. In view of the rule of law laid down in Hensley and Canterbury and the court's failure to enumerate any special circumstances which would make the fee award unjust, we find reversible error in the denial of the fee request.
In short, if the court denies the attorney fee request, it must make a finding of special circumstances.
In remanding to the trial court, we reiterate that, should the trial court not find special circumstances which would make a fee award unjust, then the amount of the fee it does award is discretionary. Hensley. The Court in Hensley acknowledged that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." The Court then added that the fee could be adjusted according to the results of the litigation. Hensley. In other words, Hensley
may provide a guide for determining the proper fee award.
We would be remiss in resolving the attorney's fee issue if we failed to acknowledge that the damages awarded to the plaintiff were not apportioned between the common-law claims and the section 1983 claim. This fact is significant in view of the jury's return of a general verdict. If the damages awarded by the jury were all founded upon the common-law count, no attorney's fee could have been awarded.
However, although Downing cross-appealed, he failed to raise as an issue in brief the problem inherent in the jury's return of a general verdict. Consequently, we are not required to resolve this issue. Boshell v. Keith, 418 So.2d 89 (Ala. 1982).
Nonetheless, we examined the record and find a failure by Downing to request, at trial, a special verdict form. In a similar situation, the Florida Supreme Court found such a failure fatal on appeal. City of Miami v. Harris, 490 So.2d 69
(Fla. 3d DCA 1985), cert. denied, 479 U.S. 1031, 107 S.Ct. 876,93 L.Ed.2d 830 (1987). Specifically, the court found that the attorney's fee award should be upheld since the verdict form did not indicate that the damages were not awarded pursuant to the section 1983 claim which would support the fee award.Harris.
Finally, we address Downing's remaining cross-appeal issue. He contends that the court erred in failing to grant his motions for judgment on the pleadings, directed verdicts, and j.n.o.v. Downing maintains the court's error is predicated on his entitlement to eleventh amendment and state sovereign immunity.
We first resolve Downing's claim to eleventh amendment immunity. As previously discussed, Parker's complaint sufficiently *Page 1184 
alleged a section 1983 claim. The eleventh amendment does not operate to bar such an action. Scheuer v. Rhodes, 416 U.S. 232,94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In short, "the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." Scheuer. Consequently, no error here.
Downing also asserts state sovereign immunity pursuant to section 14 of the Constitution of Alabama. Prior toDeStafney v. University of Alabama, 413 So.2d 391 (Ala. 1981), the supreme court held that a state official, when acting within his authority, was protected by section 14. Gill v.Sewell, 356 So.2d 1196 (Ala. 1978). However, DeStafney reduced the immunity afforded by section 14. The DeStafney court held that, in some cases, a state officer may be subject to suit for his tortious acts — even if acting within the scope of his authority.
Specifically, when considering whether a state officer is entitled to absolute immunity pursuant to section 14 of the Alabama Constitution, the court held:
 "[A] claim for personal injury based upon the alleged negligent conduct of a State employee, even when committed in the line and scope of employment, is not within the ambit of § 14's protection. Such a claim, by virtue of its nature and the relief demanded, in no way seeks to circumvent the prohibition of § 14. Any state interest affected by the suit is far too incidental to supply the requisite nexus for extension of constitutional immunity to the individual employee defendant. This suit, and the legal effects incident thereto, are strictly between the named parties plaintiff and the individual defendant. . ..
". . .
 "Although we accede to the proposition that, under certain circumstances, public policy considerations afford immunity to entities not otherwise constitutionally protected, under the factual averments of the instant case, we find that no valid public policy will be served by immunizing from liability a public employee whose tortious conduct results in personal injury to another."
DeStafney.
In other words, DeStafney established the principle that section 14 does not immunize a state employee, acting within the scope of his employment, for his negligent conduct and the resulting personal injuries to another.
In the instant case, the complaint filed against Downing alleged that the acts complained of were committed while Downing was acting in his "official capacity." However, the State is not named a party to the suit, nor is any relief sought by Parker from the State. The allegation simply established that Downing was acting pursuant to his duties as a UAB police officer when the incident occurred.
Not only was Parker's demand for relief directed solely to Downing, but the suit sounded in tort. The complaint alleged both unlawful arrest and imprisonment.
In Gill, supra, our supreme court stated:
 "In determining whether an action against a State [officer] or agent is in fact a suit against the State, the court considers the nature of the suit or the relief demanded."
We find that an examination of both the nature of the suit and the relief demanded in this case leads to the inescapable conclusion that the suit is not, in effect, one against the State. Gill. Further, although the tortious acts complained of in DeStafney involved negligence, we see no reason not to extend DeStafney to intentional torts.
As in DeStafney, "[a]ny state interest affected by the suit is far too incidental to supply the requisite nexus for extension of constitutional immunity to the individual employee defendant." Thus, we find no state sovereign immunity pursuant to section 14.
We do note that DeStafney, in spite of its reduction of section 14 immunity, established a second avenue by which state officers could be immunized. DeStafney adopted the concept of substantive immunity *Page 1185 
propounded by the Restatement (Second) of Torts, § 895D, Public Officers (1974). In summary, substantive immunity exists if one of these three conditions can be established: (1) the employee was engaged in the exercise of a discretionary function; (2) the employee was privileged and did not exceed or abuse his privilege; or (3) the employee was not negligent in the performance of his duties. DeStafney.
Downing, however, failed to plead substantive immunity. As substantive immunity is an affirmative defense and Downing failed to plead it, we will not consider it on appeal. Bell v.Chisom, 421 So.2d 1239 (Ala. 1982). Consequently, no error in refusing to enforce an immunity defense.
In view of the trial court's failure to make a finding that special circumstances rendered an award of an attorney's fee unjust, its judgment is reversed and the cause remanded for such a finding or a finding that an attorney's fee award is to be made. The other aspects of the judgment are affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
INGRAM, J., concur.
HOLMES, J., concurs in the result.