# Hartzell *versus* The Commonwealth.

*Right of Commonwealth to challenge peremptorily, how and when to be exercised.— Waiver of Challenge.—Constitutional Right of Trial by Jury, not infringed by calling Talesmen.*

1. The allowance of four peremptory challenges, under the "Criminal Procedure Act" of 1860, does not conflict with the constitutional provision "that trials by jury shall be as heretofore, and the right thereof remain inviolate." Warren *v.* The Commonwealth, 1 Wright 45, affirmed.

2. Where the peremptory challenges on the part of the Commonwealth, exhaust the jury selected from the regular "*Venire*," and *talesmen* are called from the bystanders, the prisoner is not thereby deprived of a trial by jury, "as heretofore," under the constitution; for if the Commonwealth have the right to challenge, the legal consequences which flow from its exercise cannot affect the right itself, and the right existing, its incidents are legal, one of which is the calling and impannelling talesmen.

3. The Commonwealth is not compelled to exercise her right of challenge, in the order of calling the jury, so that if the challenges to the first four called are waived she cannot afterwards challenge, but is entitled to four peremptory challenges out of *all* the jurors that may be called at any time before the panel is full, and passing by individual jurors, and permitting them to be challenged by the prisoner or sworn, is no waiver of the right.

Error to the Oyer and Terminer of *Cambria county.*

Anne Hartzell was put upon her trial for murder, at the September sitting of the Oyer and Terminer for Cambria county. Being regularly arraigned, the impannelling of a jury commenced. After several jurors had been peremptorily challenged by the prisoner, Lawrence Schrote was called as a juror, and challenged peremptorily by the Commonwealth, the counsel for prisoner objecting to such challenge, and filing an exception.

The panel became exhausted, by reason of the peremptory challenges of the Commonwealth; and the prisoner's counsel objected to calling a *tales de circumstantibus,* because *she* had not exhausted the panel. The court overruled the objection, under exception. The prisoner was convicted, whereupon the case was removed into this court, where the following errors were assigned :—

[Hartzell *v*. The Commonwealth.]

1. The jury were not selected in accordance with the Constitution of Pennsylvania.

2. The jury were not impannelled in accordance with the Act of Assembly which directs the method of procedure in such cases.

3. Peremptory challenges were allowed to the Commonwealth by the court, after the same had been waived.

4. The prisoner was compelled to stand her trial before a *tales de circumstantibus*, without her consent, because of peremptory challenges on behalf of Commonwealth.

*R. L. Johnston*, for plaintiff in error.—To doubt the constitutionality of the Act of Assembly of 1860, known as the " Criminal Procedure" Act, might appear presumptuous and in bad taste, after the ruling in Warren *v*. Commonwealth, 1 Wright 45. But the principle involved is so important, and the legislation referred to so recent, that we hope to be indulged in a brief argument in support of an exception.

The denial of peremptory challenges to the Crown, dates from a very early period in English jurisprudence. The statute of Edward I., enacted in 1305, declares, " That from henceforth, notwithstanding it be alleged by them that sue for the king, that the jurors of those inquests, or some of them, be not indifferent for the king, yet such inquest shall not remain untaken for that cause ; but if they that sue for the king will challenge any of those jurors, *they shall assign of their challenge a cause certain*, and the truth of the same challenge shall be inquired of," &c. The humane provision of this statute became a landmark in the trial of all *capital* cases, from the date of its enactment; was familiar to every judge and lawyer, and was never exercised nor *sought to be exercised* by the Commonwealth, until the case of Warren was tried.

The Constitution of Pennsylvania, Art. IX., Sec. VI., declares that " Trial by jury shall be as heretofore, and the right thereof shall remain inviolate." If the constitution contemplated nothing further than a mere trial by jury, that is, a trial by twelve men called jurors, the last clause of the sentence would have expressed all its framers intended. What then becomes of the first clause, " trial by jury shall be *as heretofore ?*" Surely it means that the trial by jury, with all its *leading characteristics*, should remain as it had been exercised many centuries before the constitution was adopted. We do not argue that this affects the manner of putting the jurors into the wheel or drawing them out—with the preliminaries the defendant has nothing, can have nothing to do. All this we admit to be a proper subject for legislation ; but when it comes to filling the panel, the case is quite different. The great leading features of *trial by jury*, as

it existed in the mother country, as it was preserved by our own fathers, is a constitutional right, and cannot be invaded by adverse legislation.

From the year 1300, then, a leading principle in trial by jury, in capital cases, has been that the Commonwealth shall not challenge without cause.

In the case of Warren *v.* Commonwealth, the defendant had the benefit of a trial by a jury selected from the regular *venire.* In this case, the peremptory challenges on behalf of the Commonwealth deprived the prisoner of this, and threw her upon a *tales de circumstantibus.*

We do not pretend that calling a *tales* is of itself an error; but we do contend that the Commonwealth has no right to put the prisoner to this disadvantage. She selects, summons, prepares her own jurors, and the prisoner has no right to interfere until arraigned. The law requires that a list of jurors shall be "set up" by the sheriff and prothonotary, "in their respective offices, for the inspection of all parties concerned." The prisoner has a right to examine this list, which the Commonwealth has furnished as her *triers*; from them she selects her own jury—and if she by challenges exhausts the panel, and compels the calling of a *tales,* it is her own election, and she cannot complain. In this case the prisoner would have been tried without a *tales,* but for the peremptory challenges of the Commonwealth.

3. The legislative intention in making so important a change in a question of life and death, must be entirely clear, to have any weight with this court. There is much confusion in the Act of 1860, the 38th section being entirely inconsistent with, and destroying whatever force there might have been in the preceding section; giving alternate challenges in all cases, which can only be done where the Commonwealth and the prisoner have the same number of challenges. It is submitted that these sections are too obscure in their meaning to work the radical change asked for them.

4. But, in any event, if the Commonwealth had the right of challenge, she waived it by refusing to challenge until after the prisoner had made her challenge. There can be little doubt the legislature intended to give the right to the Commonwealth to peremptory challenges, only in cases in which the jury were all called into the box to be sworn before the challenging commenced. And this would make the 38th section intelligible. If this construction be placed upon the act, the court erred in permitting the peremptory challenge on part of the Commonwealth. If not, and in any other view, the Commonwealth waived her right to challenge when she did not make it in accordance with the act. Whatever construction may be placed upon the different

[Hartzell *v.* The Commonwealth.]

sections of this act, there was manifest error, and the proceedings should be reversed.

*A. Kopelin* and *Philip S. Noon*, for the Commonwealth.—As the constitutionality of the 37th section of the "Criminal Procedure" Act of 1860, has been so recently passed upon by this court, it is not necessary to refer to the argument of the plaintiff in error on the first specification of error. We shall briefly notice the specifications wherein it is alleged there are distinctions between this case and that of Warren *v.* The Commonwealth, 1 Wright 45.

1. It is said: "In this case the peremptory challenges on behalf of the Commonwealth deprived the prisoner of" the benefit of a trial by jury selected from the regular *venire*, " and threw her upon a *tales de circumstantibus.*" *If the Commonwealth have the right to challenge, the logical consequences which flow from its exercise can in no way affect the right itself.* The practice of filling up a jury by awarding a *tales de circumstantibus* is quite ancient, and exists here by the same authority as the law directing the manner in which the jurors on the regular panel shall be drawn, or that requiring the prothonotary and sheriff to "set up" the list in their respective offices. It is one of the forms provided by the legislature under which the right of trial by jury is to be enjoyed, and its constitutionality has not, we believe, heretofore been questioned.

As decided by this court in Warren *v.* The Commonwealth, the Commonwealth has the right to challenge peremptorily, and, as stated by the court in Kennedy *v.* Dale, 4 W. & S. 176, "the right is a valuable one, and should not be *fancifully restricted.*" If it was a waiver to refuse to challenge the first juror called, then, indeed, is this valuable right "fancifully restricted,"—the 37th section of the "Criminal Procedure" Act, so far as it applies to cases tried in the Oyer and Terminer, a nullity—and an impartial jury, which, the court say, in Warren *v.* The Commonwealth, "is the right on both sides in a criminal trial," denied. But the legislative intention is "entirely clear." The 38th section was first enacted by statute of 14th April 1834, § 155, Purdon 473, and re-enacted in exactly the same words in the Criminal Procedure Act of 1860.

Section 37 of the Report of the Commissioners to Revise the Penal Code of Pennsylvania is as follows:—" On the trial of any indictment for treason, or misprision of treason, murder, manslaughter, concealing the death of a bastard child, rape, robbery, burglary, sodomy, malicious maiming, and arson, the accused shall be at liberty to challenge," &c.; and the 38th section of the same Report:—" In cases of any of the felonies specially

4 WR.—30

[Hartzell *v.* The Commonwealth.]

enumerated in the preceding section, the Commonwealth shall not challenge any juror without cause," &c.

It is, therefore, evident that the legislature intended to grant the right of challenge to the Commonwealth in cases to be tried in the Oyer and Terminer, because the commissioners had made a special exception of those cases, and the legislature changed it so as to include "*all cases;*" and that the 38th section, directing the challenges to be made alternately, was not intended to apply to those cases, because if it did it would utterly and entirely destroy the force and effect of the right granted.

The opinion of the court was delivered, November 18th 1861, by

THOMPSON, J.—The first assignment of error is ruled against the prisoner by the case of Warren *v.* The Commonwealth, 1 Wright 45. That case determined that the allowance of peremptory challenges to the Commonwealth did not impinge upon the constitutional provision, "that trial by jury shall be as heretofore, and the right thereof remain inviolate." It has been well argued, on part of the Commonwealth, that if in consequence of the exercise of this right the panel be exhausted, it does not destroy the right itself, and the right existing, its incidents are legal, one of which is the calling and impannelling *talesmen*. This is a legitimate sequence of the first proposition, and needs no further illustration.

But it was urged that the Commonwealth must exercise her right of challenge in the order of calling the jury; that is to say, if she waives her challenges, or any of them, to the first four called, she cannot afterwards challenge. This is not the meaning of the law, nor the practice under it. This rule is very right in civil cases and in misdemeanors, where the jurors are all called into the box before the challenges begin. Then the last man called can be as readily challenged as the first. Not so in capital cases, where the jurors are called, tried, and sworn separately, or challenged, as the case may be. There the right of challenge is to the juror on the stand, and to none others. The effect of the rule claimed would be either to require *all* the jurors to be called into the box, as in civil cases, before challenging, or limiting the Commonwealth to the first four called. We do not agree to either alternative. The ancient mode of impannelling juries in capital cases cannot be dispensed with without abrogating the right of triers upon the several members of the jury themselves, a necessary procedure to ascertain whether the juror is or is not indifferent in feeling between the prisoner and the Commonwealth. This is not to be thought of. There is no difficulty in the matter, however. The Commonwealth is entitled to four challenges out of *all* the jurors that may be called. That

[Hartzell *v.* The Commonwealth.]

is evidently the meaning of the Act of 1860, and that is just what she would have if the jury were all in the box at one time, and what she has in misdemeanors. The Commonwealth has the right to challenge the number allowed by the act at any time, we think, before the panel is full, and passing by individual jurors, and permitting them to be challenged by the prisoner, or sworn, is no waiver of her right. This necessarily results from the form to be pursued in impannelling jurors in capital cases, and is not controlled by the Act of 1860. The court were right in conducting the challenges, and as we see no error in the record,

The judgment is affirmed.