551 So.2d 343 (1989)
Alvin THOMAS d/b/a Thomas Construction Company
v.
DIVERSIFIED CONTRACTORS, INC.
88-327.
Supreme Court of Alabama.
September 15, 1989.
*344 John C. Cason of Hooper & Cason and Richard A. Lawrence, Montgomery, for appellant.
Marvin H. Campbell, Montgomery, for appellee.
JONES, Justice.
Alvin Thomas appeals from a judgment entered on a jury verdict in favor of Diversified Contractors, Inc. ("Diversified"). We address only one issue: Whether the jury selection standards announced by the United States Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), apply to civil cases. Because we hold that the standards set forth in Batson are applicable to civil cases, we reverse the judgment entered against Thomas and remand the cause. Appellant also argues that the arbitrary striking of all the blacks in the venire violated his rights under Sections 1, 11, and 13 of the Alabama Constitution of 1901. Because we hold that the appellant's rights under the Fourteenth Amendment of the United States Constitution were violated, we need not, and do not, address the question whether the appellant's rights under the Alabama Constitution were also violated.
The facts presented in the record show that Thomas is black, and that Dennis Thompson, the owner of Diversified, the plaintiff, is white. In selecting the jury, each side was allowed eight peremptory strikes. The jury venire consisted of four black members and 24 white members. All four black members of the venire were struck by the plaintiff.
Once the jury had been struck, but before the jurors were sworn, the appellant objected to the fact that all the black members of the venire had been struck by the appellee. The trial judge did not rule on this objection and proceeded to seat the jury.
In his motion for new trial, Thomas once again raised his challenge to Diversified's striking of the blacks. In his order on this motion, the trial judge stated:
"In Defendant's motion for New Trial he incorporates arguments raised in his Motion for J.N.O.V. and asserts that his constitutional rights under the Fourteenth Amendment of the United States Constitution and under Secs. 1, 11 and 13 of the Alabama Constitution of 1901 were violated due to the Plaintiff striking all black persons from the jury venire causing himself, a black person, to go before a totally white jury. This issue was raised at trial and this Court ruled that, to the Court's knowledge, Batson, did not apply in civil cases. In the recent case of Perry v. Seaboard Coastline R.R. Co., 527 So.2d 696 (Ala.1988), the Supreme Court, in a footnote, stated, [W]e will not address the issue of whether the rule of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), barring the use of peremptory strikes to discriminatorily strike members of the jury venire on the basis of race, in the criminal setting, has application in the civil setting.
"The requirements of due process historically have been applied much stricter in criminal matters as opposed to civil matters in our country. When a person's life or liberty is at stake, the courts have looked much harder in an effort to protect an individual's due process rights.

*345 This is not to be interpreted as indicating that a person's rights are any less important in a civil setting as opposed to a criminal setting. However, this Court is of the opinion that Batson does not apply in a civil case."
As the trial court correctly pointed out, this Court has not answered the question whether Batson applies to civil cases. In the Perry decision, we noted that this issue had been raised for the first time on appeal and, therefore, we did not address it. Unlike Perry, the present appeal, in a case in which the striking of the jury was properly objected to at the trial level, squarely presents the opportunity to rule on that question.
The question whether the standards established in Batson apply to civil cases has not been definitively answered by the United States Supreme Court. Several federal courts, however, have addressed the issue, reaching different results.[1] Our Court of Civil Appeals has also dealt with this issue, holding that the Batson standards do not apply in civil cases, Parker v. Downing, 547 So.2d 1180 (Ala.Civ.App. 1989). After reviewing Parker and the federal decisions that have discussed the application of the Batson standards to civil cases, we conclude that the better reasoned result is that these standards are applicable in civil cases.
In Fludd v. Dykes, 863 F.2d 822 (11th Cir.1989) [cert. filed June 23, 1989], the Eleventh Circuit Court of Appeals, after examining the policies and rights involved, held that Batson applies in civil cases as well as in criminal cases. We agree with both the reasoning and the result in that case and, therefore, we reverse the judgment in the present case and remand.
The procedural facts in Fludd are similar to those presented in the instant appeal. Fludd was a civil rights case where a black plaintiff sued a white police officer who had shot him. The two blacks on the jury venire of 15 were struck by the defendant. After the selection of the jury, but before the jurors were sworn, the appellant raised the issue of Batson and asked the court to require an explanation for the striking of the two blacks by the appellee. The trial judge ruled that Batson did not apply in a civil case and did not require the appellee to explain why he had struck the two blacks.
On appeal, Fludd argued that he had been denied the equal protection of the laws as guaranteed by the due process clause of the Fifth Amendment when the appellee was allowed to use his peremptory challenges to exclude both the blacks from the jury[2] The Court of Appeals agreed and held:
"We believe, however, that the policies underlying the Supreme Court's decision in Batson are equally applicable in the civil context. As the Court observed in Batson, there are times when a party has enough peremptory challenges to remove all of his adversary's racial peers from the venire and indeed exercises them for the purpose of obtaining a petit jury that may have a greater sympathy for him than for his adversary. This situation obviously arises in the civil context as well. Nor can we perceive any distinction in the harm to the individual's constitutional rights. Finally, we see no reason why a civil litigant would be unduly prejudiced by explaining the purpose of a strike where the circumstantial evidence indicates that he made it for a discriminatory purpose.
"We therefore hold that Batson, applies in civil cases. Accordingly, when the objecting party shows that `he is a member of a cognizable racial group' and *346 that the `relevant circumstances raise an inference' that his opponent `has exercised peremptory challenges to remove from the venire members of [the objecting party's] race,' the objecting party has made out a prima facie case of purposeful discrimination. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. The `explanation need not rise to the level justifying exercise of a challenge for cause,' id.; rather, it need only be `a neutral explanation related to the particular case to be tried.' Id. at 98, 106 S.Ct. at 1723."
863 F.2d at 828-29.
In the present case, the trial judge did not require the appellee to explain why it struck the four blacks. Nor does an examination of the record suggest why the blacks were struck. However, these facts, standing alone, do not mandate that a new trial automatically be granted to Thomas.
It is for the trial court to decide whether the striking of the four blacks in this case made out a prima facie case of discrimination against the appellant. If the trial court determines that the appellee sought to discriminate against the appellant through the use of his peremptory challenges, then the burden will shift to the appellee to provide a race-neutral explanation for these strikes. If no adequate race-neutral reason is provided, then the appellant must be given a new trial.
As the Supreme Court stated in Batson:
"In this case, petitioner made a timely objection to the prosecutor's removal of all black persons on the venire. Because the trial court flatly rejected the objection without requiring the prosecutor to give an explanation for his action, we remand this case for further proceedings. If the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed."
476 U.S. at 100, 106 S.Ct. at 1725, 90 L.Ed.2d at 90.
Applying this language to a civil context, the Fludd court noted:
"If the district court concludes that appellees purposefully discriminated against the blacks they challenged, and appellees' counsel does not come forward with a neutral explanation for his action, the appellant must receive a new trial."
863 F.2d at 829.
We therefore reverse the judgment and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and STEAGALL and KENNEDY, JJ., concur.
ADAMS, J., concurs specially.
MADDOX, ALMON, SHORES and HOUSTON, JJ., dissent.
ADAMS, Justice (concurring specially).
This case presents the inevitable situation that has been anticipated since the holding of the Supreme Court of the United States in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The fundamental principles of Batson forbid the prosecutor in a state criminal action to exercise peremptory challenges to remove members of the defendant's race from the venire. Those principles command the same result in a civil action among private litigants. I write specially in this case because I feel that if we were to limit the holding of Batson to criminal cases, we would betray the fundamental principles enunciated in Batson.
Alvin Thomas, who is black, appeals from a jury verdict in favor of Diversified Contractors, Inc. (hereinafter "Diversified"). Diversified is wholly owned by Dennis Thompson, who is white. The case arose out of an alleged breach of an oral contract.
The jury was struck from a venire of 28 persons. Diversified's counsel peremptorily challenged the four black persons on the venire, and, as a result, an all-white jury was chosen to try the case.
After selection of the jury, but before the jury was sworn, Thomas's counsel objected *347 to the arbitrary striking by Diversified of all the blacks on the venire. The trial court denied the objection, and the jury subsequently returned a verdict against Thomas.
In his motion for new trial, Thomas once again raised his objection to the arbitrary striking of blacks from the venire. The trial court denied Thomas's motion and ruled that Batson's holding did not apply in civil cases.
In Batson, the Supreme Court held that the equal protection clause of the Fourteenth Amendment forbids the prosecutor in a state criminal action to exercise peremptory challenges to remove members of the defendant's race from the venire. This Court applied the new standard enunciated in Batson in Ex parte Jackson, 516 So.2d 768 (Ala.1986). Moreover, in Ex parte Branch, 526 So.2d 609 (Ala.1987), we set forth some general guidelines for reviewing the prosecution's "race-neutral" explanations for using peremptory challenges against black jurors.
Until the case at bar, this Court had not been adequately presented with the issue of whether a private litigant in the trial of a civil case can challenge the exercise of peremptory strikes on racial grounds. See Perry v. Seaboard Coastline R.R. Co., 527 So.2d 696 (Ala.1988); Stallworth v. Board of School Commissioners of Mobile Co., 507 So.2d 1323 (Ala.1987). While I agree with the majority opinion's holding, I write specially because I think the majority falls short in its treatment of this issue.
To establish a violation of equal protection, a litigant must demonstrate that the state was the source of the purposeful discrimination. In a criminal case, the prosecutor exercising the peremptory strike is the state actor. In a civil action, however, there is no state actor utilizing the peremptory strike.
Several federal courts, with differing results, have addressed the issue of whether the principles of Batson apply to civil cases.[3] The central issue in those cases has been whether there was a discriminatory "state actor" for purposes of the equal protection clause.
In Clark v. City of Bridgeport, 645 F.Supp. 890 (D.Conn.1986), three civil rights cases were brought against the City of Bridgeport and several named police officers. The defendants used their peremptory challenges to strike every black citizen available to serve on the juries in all three cases. The federal district court held that the equal protection analysis enunciated in Batson pertaining to the use of peremptory challenges applied not only to criminal cases, but also to civil cases in which there had been a state action. 645 F.Supp. at 896. The court in Clark found that the defendants' counsel, the city attorney, acting as an official of the city, was the state actor.
Clark was a unique case where the city attorney was involved in the civil action. In Edmonson v. Leesville Concrete Co., 860 F.2d 1308 (5th Cir.1988), a black plaintiff brought a personal injury action arising out of alleged negligence on a construction job. The plaintiff used all three of his peremptory challenges to excuse whites. The defendant excused two blacks and one white. The plaintiff's counsel asked the trial court to require defense counsel to articulate a neutral explanation for his strikes, citing Batson. The trial court refused and impaneled a jury of 11 whites and one black. Plaintiff sought a new trial because of the defendant's alleged racial *348 discrimination in the exercise of its peremptory challenges.
The Fifth Circuit held that the guarantee of the equal protection forbids the exercise of peremptory challenges on racial grounds by private litigants in the trial of a civil case. The court drew on the fundamental principles of Batson:
"Racial prejudice has no more place in the federal courtroom on the days the court is conducting a civil trial than it does on the days when the same judge, seated at the same bench, in the same courtroom, is conducting a criminal trial.
". . . .
"If we were to limit Batson to criminal cases, we would betray Batson's fundamental principle: the state's use, toleration, and approval of peremptory challenges based on race violates the equal protection clause."
860 F.2d at 1313-14.
The Eleventh Circuit Court of Appeals has held that it is the trial judge who is the state actor. In Fludd v. Dykes, 863 F.2d 822 (11th Cir.1989), a black citizen brought a civil rights action against a police officer and his supervisor, both of whom were white. The defendants peremptorily challenged the two black persons on the venire, and their removal resulted in an all-white jury. Plaintiff's counsel objected to the challenges, citing Batson. The trial court overruled the objection, holding that Batson did not apply to civil cases.
The Eleventh Circuit held that Batson applied to civil cases. With regard to the state actor, the court noted:
"When blacks are excluded from jury service on account of their race, the Supreme Court has long recognized that the discriminatory actor is the trial courteven when the decision to exclude blacks may have originated in another state entity, such as the legislature....
". . . .
"Thus, until the trial judge overrules a party's objection to the racial composition of the venire, the law treats any previous decision on the part of a state entity to discriminate as harmless, insofar as the objecting party is concerned. The trial judge's decisionto proceed to trial, over the party's objection, with a jury selected from the venire on the basis of raceis the one that harms the objecting party. In overruling the objection, which informed the court that the peremptory challenger may be excluding blacks from the venire on account of their race, the judge becomes guilty of the sort of discriminatory conduct that the equal protection clause proscribes. Because the trial judge constitutes the discriminatory state actor under the equal protection clause, we conclude that there is no constitutional bar to the application of Batson to a civil suit."
863 F.2d at 828.
In the case at bar, Thomas timely objected to the arbitrary striking of all the blacks on the venire. The trial court overruled his objection, and later issued a written order wherein he ruled that Batson did not apply to civil cases. I agree with the analysis of the Eleventh Circuit, that in civil cases it is the trial judge who is the discriminatory state actor.
Arguments have been made that the principles of Batson have severely limited the use of the peremptory challenge and may eventually lead to its demise. Ex parte Branch, 526 So.2d 609, 631 (Ala. 1987) (Beatty, J., dissenting). A "peremptory challenge" may be described as an arbitrary and capricious challenge to the seating of a certain prospective juror, without any showing of cause. 47 Am.Jur.2d Jury SS 233 (1969). The right of rejection by peremptory challenge has been traditionally exercised without the assignment of any reason or any inquiry into motive. This right has, however, been limited by the Supreme Court in several decisions, including Batson.
While the use of the challenge has been limited, I believe that our cases have provided adequate procedural safeguards to support the retention of the policy allowing peremptory challenges. The guidelines of Ex parte Jackson and Ex parte Branch would be equally applicable in civil cases. The right to peremptorily challenge still exists; however, if the challenge appears *349 to be racially motivated, counsel should be prepared to state race-neutral grounds for his challenge.
HOUSTON, Justice (dissenting).
Although the supremacy clause of the United States Constitution requires that I follow the holding in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in criminal cases, reasonable judges can differ as to whether we are required to extend the holding in Batson to civil cases.
I see the premise of Batson as being that "A person's race simply `is unrelated to his fitness as a juror.'" Batson at 87, 106 S.Ct. at 1718, quoting Thiel v. Southern Pacific Co., 328 U.S. 217, 227, 66 S.Ct. 984, 989, 90 L.Ed. 1181 (1946) (Frankfurter, J., dissenting).
I concur with that wholeheartedly. But does the peremptory challenge reach "fitness"? I think not. "Fitness" is "the condition of being qualified or suitable." Webster's Third New International Dictionary 860 (1971). "Qualified" is defined as "fitted (as by endowments or accomplishments) for a particular purpose: Competent, fit." Webster's at 1858. "Suitable" is defined as "having the necessary qualifications: meeting requirements." Webster's at 2286.
It is the policy of the State of Alabama that persons selected for jury service be selected at random from a fair cross-section of the population of the area served by the court, and that all qualified citizens have an opportunity "to be considered for jury service." Ala.Code 1975, § 12-16-55.
The Legislature has wisely provided that a citizen shall not be excluded from participation or consideration for jury service "on account of race, color, religion, sex, national original or economic status." Ala.Code 1975, § 12-16-56.[4]
Race, color, religion, sex, national origin, or economic status must not be considered in selecting jurors for the master list, by a jury commission or by the use of mechanical or electronic data processing equipment in accordance with Ala.Code 1975, § 12-16-146.
Race, color, religion, sex, national origin, or economic status must not be considered in the preparation of the venire list and the summoning of jurors by writs of venire facias.
After the venire is selected, Ala.Code 1975, § 12-16-6, requires that the trial court, before administering the oath prescribed by law to any petit jurors, ascertain that such jurors possess the qualifications required by law.
These qualifications are that the juror is generally reputed to be honest and intelligent and is esteemed in the community for integrity, good character, and sound judgment; is a citizen of the United States; has been a resident of the county for more than 12 months; is over the age of 19; can read, speak, understand, and follow instructions given by a judge in the English language; is capable by reason of physical and mental ability to render satisfactory jury service; is not afflicted with any permanent disease or physical weakness that makes the juror unfit to discharge the duties of a juror; and has not lost the right to vote by conviction for any offense involving moral turpitude. Ala.Code 1975, § 12-16-60. A person's "race, color, religion, sex, national original or economic status" has nothing to do with qualification.
After the venire is qualified and the oath is administered (Ala.Code 1975, § 12-16-70), either party can challenge any juror for cause for any ground listed in Ala.Code 1975, § 12-16-150. Neither race, color, religion, sex, national origin, nor economic status is a ground for challenge for cause. Thereafter, in civil actions where either party has demanded a struck jury, the clerk must furnish a list of 24 jurors who cannot "be challenged for any cause, except bias or interest as to the particular case." Ala.Code 1975, § 12-16-140 (emphasis added). The parties alternately strike; and it is at this point that the majority *350 opinion holds that one party cannot strike a black if the other party is a black, without having an articulable race-neutral reason. I disagree. At this point, we are beyond the consideration of a person's fitness for jury duty. All those from whom selection is to be made are fit and qualified to serve as jurors and are unbiased in the case. We are at the point where an attorney must decide which of these fit, qualified, and unbiased people will be most impressed by his or her client and his or her client's cause of action or defense.
While the "arbitrary and capricious species of challenge to a certain number of jurors without showing any cause at all," known as the peremptory challenge, has been permitted from the time of the settled common law in capital felonies, it was never allowed in English civil proceedings.
"The right of challenge comes from the common law with the trial by jury itself, and has always been held essential to the fairness of trial by jury. As was said by Blackstone, and repeated by Mr. Justice Story: `In criminal cases, or at least in capital ones, there is, in favorem vitoe, allowed to the prisoner an arbitrary and capricious species of challenge to a certain number of jurors, without showing any cause at all; which is called a peremptory challenge; a provision full of that tenderness and humanity to prisoners, for which our English laws are justly famous. This is grounded on two reasons: 1. As every one must be sensible, what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another; and how necessary it is that a prisoner (when put to defend his life) should have a good opinion of his jury, the want of which might totally disconcert him; the law wills not that he should be tried by any one man against whom he has conceived a prejudice even without being able to assign a reason for such his dislike. 2. Because, upon challenges for cause shown, if the reason assigned prove insufficient to set aside the juror, perhaps the bare questioning his indifference may sometimes provoke a resentment; to prevent all ill consequences from which, the prisoner is still at liberty, if he pleases, peremptorily to set him aside.' 4 Bl.Com. 353; United States v. Marchant [White, 28 F.Cas. 580], 4. Mason, 158, 160, 162; and 12 Wheat. 480, 482 [6 L.Ed. 700 (1827)]. See, also, Co.Lit. 156b; Termes de la Ley, voc. Challenge, 2 Hawk. c. 43, § 4; Regina v. Frost, 9 Car. & P. 129, 137; Hartzell v. Commonwealth, 40 Penn.St. 462, 466; State v. Price, 10 Rich. (Law,) 351, 375."
Lewis v. United States, 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892).
The first basis for the peremptory challenge in the common law was not something that inured to the State's interest. This was for the benefit of one whose life was at stake, and this gave the right to challenge a potential juror for any prejudiced or rational reason.
In civil cases, the life of a party to the litigation is not at issue, but a party's rights and property are. As long as the "arbitrary and capricious species of challenge to a certain number of jurors without showing any cause at all" is available in civil cases, should not such litigants whose rights and property are at issue be able to strike whomever they may wish to strike, even if based on "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another"?
In Barbara Allen Babcock's Voir Dire: Preserving "Its Wonderful Power," 27 Stan.L.Review 545, 552 (1975), the following appears:
"The ideal of an impartial jury as seen in the `cross section of the community' cases is much more that people should be different from each other than individually `indifferent.' But if the `cross section' ideal presupposes that absolute indifference will not be achieved, then implicit in the goal of having a variety of people on the jury is the idea that `impartial' jurors are ones who would at least be willing to be persuaded and influenced by the life experiences of others.
"For finding these `impartial' jurors, the peremptory challenge serves functions *351 that the challenge for cause could never fill. The first of these is didactic; the peremptory challenge teaches the litigant, and through him the community, that the jury is a good and proper mode for deciding matters and that its decision should be followed because in a real sense the jury belongs to the litigant: he chooses it. Without giving any reason or meeting any legal test, he may dismiss from `his' jury those he fears or hates the most, so that he is left with `a good opinion of the jury, the want of which might totally disconcert him; the law wills not that he should be tried by any one man against whom he has conceived a prejudice even without being able to assign a reason for such dislike.' [Quoting Blackstone.] The ideal that the peremptory serves is that the jury not only should be fair and impartial, but should seem to be so to those whose fortunes are at issue. As Justice Frankfurter once wrote: `The appearance of impartiality is an essential manifestation of its reality.'"
The litigants' good opinion of their jury, and through that the community's acceptance of the jury as "a good and proper mode for deciding matters," is the underlying justification for the peremptory challenge. This justification is undermined if one portion of the community may exercise this right for any reason, whether arbitrary, capricious, or prejudiced, and another portion of that same community may not.
Justice Powell in Batson, supra, wrote:
"Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges `for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried ... the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."

476 U.S. at 89, 106 S.Ct. at 1718-19. (Emphasis supplied.)
The proscription of the Fourteenth Amendment ("nor [shall any state] deny to any person within its jurisdiction the equal protection of the laws") applies only to such action as may be attributed to the State and does not inhibit of its own force the conduct of private individuals, (Gilmore v. City of Montgomery, 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974); NLRB v. Sumter Plywood Corp., 535 F.2d 917 (5th Cir.1976), rehearing denied, 541 F.2d 281, cert. denied, 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1976); Cook v. Advertiser Co., 323 F.Supp. 1212 (M.D.Ala. 1971), affirmed, 458 F.2d 1119 (5th Cir. 1972)), unless the conduct of private individuals has become so entwined with governmental policies and so impregnated with governmental character as to become subject to constitutional limitations placed on state action. Smith v. Young Men's Christian Ass'n of Montgomery, 316 F.Supp. 899 (M.D.Ala.1970), modified, 462 F.2d 634 (5th Cir.1972).
A lawyer representing a civil litigant has a duty to "exercise independent professional judgment on behalf of a client." Canon 5, Code of Professional Responsibility of the Alabama State Bar ("Code"). (Emphasis added.) A lawyer should represent that client "competently." Canon 6. A lawyer should represent that client "zealously within the bounds of the law." Canon 7. In Alabama, a lawyer representing a private individual or a nongovernmental entity in a civil action is not engaged in state action, nor is his representation so entwined with governmental policies or impregnated with governmental character that it should be held to be subject to the constitutional limitations placed on state action.
I am most impressed with Judge Gee's dissent in the three-judge opinion in Edmonson v. Leesville Concrete Co., 860 F.2d 1308, 1315-17 (5th Cir.1988), which is presently being reheard en banc:
"The first subsidiary issue posed by the majority in the body of the opinion is `whether the exercise of peremptory challenges by a private litigant in a civil action pending in federal court is a *352 government action.' One would think that to state the issue in this manner would be to answer it: unlike the prosecutor in Batson, counsel in this case and his client are private parties, as are their adversaries, and the court took no part beyond permitting venire members dismissed by counsel to depart. Under the two-part test enunciated by the Court in [Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) ], however, it would be difficult to maintain that the strikes exercised by counsel in this case did not constitute `the exercise of a right or privilege having its source in state authority.' 457 U.S. at 939, 102 S.Ct. at 2755.
"It seems far more doubtful, however, that the second prong of the test is satisfied: that private counsel, striking the venire in a civil case, is a `state actor.' Indeed, if a public defender employed by the state is not such an actor, as the Supreme Court held in Polk County v. Dodson, [454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ], it seems clear that privately-retained counsel is not. This leaves as the requisite state actor only the trial judge, who performs the merely ministerial function of excusing the veniremen cut by counsel from further attendance in the case. It is difficult to conceive of a more minimal involvement than thisone which requires the exercise of no judgment or discretion, one which consists of nothing more than permitting the excused to depart. I would not hold that this mere standing aside constitutes `action,' especially in view of such Supreme Court pronouncements as that found in Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982), that `a state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement ... that the choice must... be deemed that of the state' and that `[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the state responsible for those initiatives under the... Fourteenth Amendment.'
"In Batson, the state actor was the prosecuting attorney, the very embodiment of the state, exercising its power and acting in its interest in all respects. In today's case, no such figure is to be found: only private counsel, who holds no state post, and the trial judge, who took no action of any significance. I would not find state action here.
"Nor can I agree that exercising strikes in a given case along ethnic lines necessarily involves or gives the appearance of involving derogatory racial views, as does the attempt to exclude black jurors generally from the venire. As Judge Garwood explained for our en banc Court, in a celebrated passage quoted by then Chief Justice Burger in his Batson dissent:
"`Exclusion from the venire summons process implies that the government (usually the legislative or judicial branch) ... has made the general determination that those excluded are unfit to try any case. Exercise of the peremptory challenge, by contrast, represents the discrete decision, made by one of two or more opposed litigants in the trial phase of our adversary system of justice, that the challenged venireperson will likely be more unfavorable to that litigant in that particular case than others on the same venire.
"`Thus, excluding a particular cognizable group from all venire pools is stigmatizing and discriminatory in several interrelated ways that the peremptory challenge is not. The former singles out the excluded group, while individuals of all groups are equally subject to peremptory challenge on any basis, including their group affiliation. Further, venire-pool exclusion bespeaks a priori across-the-board unfitness, while peremptory-strike exclusion merely suggests potential partiality in a particular isolated case. Exclusion from venires focuses on the inherent attributes of the excluded group and infers its inferiority, but the peremptory does not. To suggest that a particular race is unfit to judge in any case necessarily *353 is racially insulting. To suggest that each race may have its own special concerns, or even may tend to favor its own, is not.'
"United States v. Leslie, 783 F.2d 541, 554 (5th Cir.1986) (en banc), quoted at 476 U.S. 79, 122-23, 106 S.Ct. 1712, 1736-37, 90 L.Ed.2d 69 (1986).
"Finally, I am unable to avoid the conclusion that first the Supreme Court, with its decision in Batson, and now our panel, with today's case, have leapt halfway across a logical chasm and come to rest in midair. The essence of a peremptory challenge is that it need not be excused or justified; indeed, the challenger himself may have no articulable reason for his action. Every lawyer who has tried cases for any length of time knows this, would be forced to admit, if pressed, that on occasion he has exercised strikes on no firmer basis than `I didn't like the way he looked at my client' or `Her tone of voice didn't sound right.' Hunches, implicit feelings, even crochetssome always strike barbers, or housepainters, or ironworkersare the stuff of peremptory challenges. But who would credit such a reason, if advanced as the basis for challenging a member of an ethnic minority? Nor does equal opportunity for members of the various ethnic groups to serve as jurors result from today's decision, rather the contrary; for counsel may well think twice about lodging a challenge for which he must possess (or invent) suitable, rational reasons, as opposed to one for which he need produce none.
"What remains after today's holding is not the peremptory challenge which our procedure has known for decadesor not one which can be freely exercised against all jurors in all cases, at any rate. Justice Marshall would dispense with strikes entirely, and perhaps this will be the final outcome. Batson, 476 U.S. at 106-08, 106 S.Ct. at 1728-29 (Marshall, J., concurring). In this much at least he is surely correct, that we must go on or backward; to stay here is to rest content with a strange procedural creature indeed: a challenge for semi-cause, exercisable differentially as to jurors depending on how the ethnic group to which they belong correlates with that of the striker's clienta skewed and curious device, exercisable without giving reasons in some cases but not in others, all depending on race."
I respectfully dissent, because the decision today will impair severely the utility of a procedural device whose underlying justificationthe community's and the litigants' acceptance of a jury as "a good and proper mode of deciding matters"is, in my opinion, desperately needed today.
MADDOX and SHORES, JJ., concur.
NOTES
[1] See Fludd v. Dykes, 863 F.2d 822 (11th Cir. 1989) (Batson applies to civil cases); Edmonson v. Leesville Concrete Co., 860 F.2d 1308 (5th Cir.1988) (pending on en banc rehearing) (applying Batson to civil cases); Wilson v. Cross, 845 F.2d 163 (8th Cir.1988) (on facts of the case no prima facie discrimination was established, but question of application of Batson to civil cases is still open); Clark v. City of Bridgeport, 645 F.Supp. 890 (D.Conn.1986) (Batson applies to civil cases involving state action); Esposito v. Buonome, 642 F.Supp. 760 (D.Conn.1986) (no prima facie case, but if there had been, Batson would not apply to civil case).
[2] Although the Fludd decision deals with the Fifth Amendment, the rationale is equally applicable to a claim in a state court under the Fourteenth Amendment. The equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment. Buckley v. Valeo, 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976).
[3] See Fludd v. Dykes, 863 F.2d 822 (11th Cir. 1989), petition for cert. filed, Tiller v. Fludd, 58 U.S.L.W. 3001 (U.S. June 23, 1989) (No. 88-2088) (applied Batson to civil cases); Swapshire v. Baer, 865 F.2d 948 (8th Cir.1989) (expressed "strong doubts" whether Batson applied to civil cases); Edmonson v. Leesville Concrete Co., 860 F.2d 1308 (5th Cir.1988) (reh'g granted en banc) (applied Batson to civil cases); Maloney v. Washington, 690 F.Supp. 687 (N.D.Ill.1988), vacated on other grounds, Maloney v. Plunkett, 854 F.2d 152 (7th Cir.1988) (applied Batson to civil cases); Wilson v. Cross, 845 F.2d 163 (8th Cir. 1988) (expressed "strong doubts" whether Batson applied to civil cases, but, in any event, no prima facie discrimination was established); Clark v. City of Bridgeport, 645 F.Supp. 890 (D.Conn.1986) (applied Batson to civil cases); Esposito v. Buonome, 642 F.Supp. 760 (D.Conn. 1986) (refused to apply Batson to civil cases, but, in any event, no prima facie case of purposeful discrimination was established).
[4] To exclude means "to bar from participation, enjoyment, consideration, or inclusion." Webster's at 793.