Although the supremacy clause of the United States Constitution requires that I follow the holding in Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in criminal cases, reasonable judges can differ as to whether we are required to extend the holding in Batson to civil cases.
I see the premise of Batson as being that "A person's race simply 'is unrelated to his fitness as a juror.' " Batson at 87, 106 S.Ct. at 1718, quoting Thiel v. Southern Pacific Co.,328 U.S. 217, 227, 66 S.Ct. 984, 989, 90 L.Ed. 1181 (1946) (Frankfurter, J., dissenting).
I concur with that wholeheartedly. But does the peremptory challenge reach "fitness"? I think not. "Fitness" is "the condition of being qualified or suitable." Webster's Third NewInternational Dictionary 860 (1971). "Qualified" is defined as "fitted (as by endowments or accomplishments) for a particular purpose: Competent, fit." Webster's at 1858. "Suitable" is defined as "having the necessary qualifications: meeting requirements." Webster's at 2286.
It is the policy of the State of Alabama that persons selected for jury service be selected at random from a fair cross-section of the population of the area served by the court, and that all qualified citizens have an opportunity "to be considered for jury service." Ala. Code 1975, § 12-16-55.
The Legislature has wisely provided that a citizen shall not be excluded from participation or consideration for jury service "on account of race, color, religion, sex, national original or economic status." Ala. Code 1975, § 12-16-56.[4]
Race, color, religion, sex, national origin, or economic status must not be considered in selecting jurors for the master list, by a jury commission or by the use of mechanical or electronic data processing equipment in accordance with Ala. Code 1975, § 12-16-146.
Race, color, religion, sex, national origin, or economic status must not be considered in the preparation of the venire list and the summoning of jurors by writs of venire facias.
After the venire is selected, Ala. Code 1975, § 12-16-6, requires that the trial court, before administering the oath prescribed by law to any petit jurors, ascertain that such jurors possess the qualifications required by law.
These qualifications are that the juror is generally reputed to be honest and intelligent and is esteemed in the community for integrity, good character, and sound judgment; is a citizen of the United States; has been a resident of the county for more than 12 months; is over the age of 19; can read, speak, understand, and follow instructions given by a judge in the English language; is capable by reason of physical and mental ability to render satisfactory jury service; is not afflicted with any permanent disease or physical weakness that makes the juror unfit to discharge the duties of a juror; and has not lost the right to vote by conviction for any offense involving moral turpitude. Ala. Code 1975, § 12-16-60. A person's "race, color, religion, sex, national original or economic status" has nothing to do with qualification.
After the venire is qualified and the oath is administered (Ala. Code 1975, § 12-16-70), either party can challenge any juror for cause for any ground listed in Ala. Code 1975, §12-16-150. Neither race, color, religion, sex, national origin, nor economic status is a ground for challenge for cause. Thereafter, in civil actions where either party has demanded a struck jury, the clerk must furnish a list of 24 jurors whocannot "be challenged for any cause, except bias or interest as to the particular case." Ala. Code 1975, § 12-16-140 (emphasis added). The parties alternately strike; and it is at this point that the majority *Page 350 
opinion holds that one party cannot strike a black if the other party is a black, without having an articulable race-neutral reason. I disagree. At this point, we are beyond the consideration of a person's fitness for jury duty. All those from whom selection is to be made are fit and qualified to serve as jurors and are unbiased in the case. We are at the point where an attorney must decide which of these fit, qualified, and unbiased people will be most impressed by his or her client and his or her client's cause of action or defense.
While the "arbitrary and capricious species of challenge to a certain number of jurors without showing any cause at all," known as the peremptory challenge, has been permitted from the time of the settled common law in capital felonies, it was never allowed in English civil proceedings.
 "The right of challenge comes from the common law with the trial by jury itself, and has always been held essential to the fairness of trial by jury. As was said by Blackstone, and repeated by Mr. Justice Story: 'In criminal cases, or at least in capital ones, there is, in favorem vitoe, allowed to the prisoner an arbitrary and capricious species of challenge to a certain number of jurors, without showing any cause at all; which is called a peremptory challenge; a provision full of that tenderness and humanity to prisoners, for which our English laws are justly famous. This is grounded on two reasons: 1. As every one must be sensible, what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another; and how necessary it is that a prisoner (when put to defend his life) should have a good opinion of his jury, the want of which might totally disconcert him; the law wills not that he should be tried by any one man against whom he has conceived a prejudice even without being able to assign a reason for such his dislike. 2. Because, upon challenges for cause shown, if the reason assigned prove insufficient to set aside the juror, perhaps the bare questioning his indifference may sometimes provoke a resentment; to prevent all ill consequences from which, the prisoner is still at liberty, if he pleases, peremptorily to set him aside.' 4 Bl.Com. 353; United States v. Marchant
[White, 28 F.Cas. 580], 4. Mason, 158, 160, 162; and 12 Wheat. 480, 482 [6 L.Ed. 700 (1827)]. See, also, Co.Lit. 156b; Termes de la Ley, voc.
Challenge, 2 Hawk. c. 43, § 4; Regina v. Frost, 9 Car. P. 129, 137; Hartzell v. Commonwealth, 40 Penn.St. 462, 466; State v. Price, 10 Rich. (Law,) 351, 375."
Lewis v. United States, 146 U.S. 370, 376, 13 S.Ct. 136, 138,36 L.Ed. 1011 (1892).
The first basis for the peremptory challenge in the common law was not something that inured to the State's interest. This was for the benefit of one whose life was at stake, and this gave the right to challenge a potential juror for any prejudiced or rational reason.
In civil cases, the life of a party to the litigation is not at issue, but a party's rights and property are. As long as the "arbitrary and capricious species of challenge to a certain number of jurors without showing any cause at all" is available in civil cases, should not such litigants whose rights and property are at issue be able to strike whomever they may wish to strike, even if based on "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another"?
In Barbara Allen Babcock's Voir Dire: Preserving "ItsWonderful Power," 27 Stan.L.Review 545, 552 (1975), the following appears:
 "The ideal of an impartial jury as seen in the 'cross section of the community' cases is much more that people should be different from each other than individually 'indifferent.' But if the 'cross section' ideal presupposes that absolute indifference will not be achieved, then implicit in the goal of having a variety of people on the jury is the idea that 'impartial' jurors are ones who would at least be willing to be persuaded and influenced by the life experiences of others.
 "For finding these 'impartial' jurors, the peremptory challenge serves functions *Page 351 
that the challenge for cause could never fill. The first of these is didactic; the peremptory challenge teaches the litigant, and through him the community, that the jury is a good and proper mode for deciding matters and that its decision should be followed because in a real sense the jury belongs to the litigant: he chooses it. Without giving any reason or meeting any legal test, he may dismiss from 'his' jury those he fears or hates the most, so that he is left with 'a good opinion of the jury, the want of which might totally disconcert him; the law wills not that he should be tried by any one man against whom he has conceived a prejudice even without being able to assign a reason for such dislike.' [Quoting Blackstone.] The ideal that the peremptory serves is that the jury not only should be fair and impartial, but should seem to be so to those whose fortunes are at issue. As Justice Frankfurter once wrote: 'The appearance of impartiality is an essential manifestation of its reality.' "
The litigants' good opinion of their jury, and through that the community's acceptance of the jury as "a good and proper mode for deciding matters," is the underlying justification for the peremptory challenge. This justification is undermined if one portion of the community may exercise this right for any reason, whether arbitrary, capricious, or prejudiced, and another portion of that same community may not.
 Justice Powell in Batson, supra, wrote: "Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried . . . the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."
476 U.S. at 89, 106 S.Ct. at 1718-19. (Emphasis supplied.)
The proscription of the Fourteenth Amendment ("nor [shall any state] deny to any person within its jurisdiction the equal protection of the laws") applies only to such action as may be attributed to the State and does not inhibit of its own force the conduct of private individuals, (Gilmore v. City ofMontgomery, 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974);NLRB v. Sumter Plywood Corp., 535 F.2d 917 (5th Cir. 1976), rehearing denied, 541 F.2d 281, cert. denied, 429 U.S. 1092,97 S.Ct. 1105, 51 L.Ed.2d 538 (1976); Cook v. Advertiser Co.,323 F. Supp. 1212 (M.D.Ala. 1971), affirmed, 458 F.2d 1119 (5th Cir. 1972)), unless the conduct of private individuals has become so entwined with governmental policies and so impregnated with governmental character as to become subject to constitutional limitations placed on state action. Smith v.Young Men's Christian Ass'n of Montgomery, 316 F. Supp. 899
(M.D.Ala. 1970), modified, 462 F.2d 634 (5th Cir. 1972).
A lawyer representing a civil litigant has a duty to "exercise independent professional judgment on behalf of a client." Canon 5, Code of Professional Responsibility of the Alabama State Bar ("Code"). (Emphasis added.) A lawyer should represent that client "competently." Canon 6. A lawyer should represent that client "zealously within the bounds of the law." Canon 7. In Alabama, a lawyer representing a private individual or a nongovernmental entity in a civil action is not engaged in state action, nor is his representation so entwined with governmental policies or impregnated with governmental character that it should be held to be subject to the constitutional limitations placed on state action.
I am most impressed with Judge Gee's dissent in the three-judge opinion in Edmonson v. Leesville Concrete Co.,860 F.2d 1308, 1315-17 (5th Cir. 1988), which is presently being reheard en banc:
 "The first subsidiary issue posed by the majority in the body of the opinion is 'whether the exercise of peremptory challenges by a private litigant in a civil action pending in federal court is a *Page 352 
government action.' One would think that to state the issue in this manner would be to answer it: unlike the prosecutor in Batson, counsel in this case and his client are private parties, as are their adversaries, and the court took no part beyond permitting venire members dismissed by counsel to depart. Under the two-part test enunciated by the Court in [Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482
(1982)], however, it would be difficult to maintain that the strikes exercised by counsel in this case did not constitute 'the exercise of a right or privilege having its source in state authority.' 457 U.S. at 939, 102 S.Ct. at 2755.
 "It seems far more doubtful, however, that the second prong of the test is satisfied: that private counsel, striking the venire in a civil case, is a 'state actor.' Indeed, if a public defender employed by the state is not such an actor, as the Supreme Court held in Polk County v. Dodson, [454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)], it seems clear that privately-retained counsel is not. This leaves as the requisite state actor only the trial judge, who performs the merely ministerial function of excusing the veniremen cut by counsel from further attendance in the case. It is difficult to conceive of a more minimal involvement than this — one which requires the exercise of no judgment or discretion, one which consists of nothing more than permitting the excused to depart. I would not hold that this mere standing aside constitutes 'action,' especially in view of such Supreme Court pronouncements as that found in Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982), that 'a state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement . . . that the choice must . . . be deemed that of the state' and that '[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the state responsible for those initiatives under the . . . Fourteenth Amendment.'
 "In Batson, the state actor was the prosecuting attorney, the very embodiment of the state, exercising its power and acting in its interest in all respects. In today's case, no such figure is to be found: only private counsel, who holds no state post, and the trial judge, who took no action of any significance. I would not find state action here.
 "Nor can I agree that exercising strikes in a given case along ethnic lines necessarily involves or gives the appearance of involving derogatory racial views, as does the attempt to exclude black jurors generally from the venire. As Judge Garwood explained for our en banc Court, in a celebrated passage quoted by then Chief Justice Burger in his Batson dissent:
 " 'Exclusion from the venire summons process implies that the government (usually the legislative or judicial branch) . . . has made the general determination that those excluded are unfit to try any case. Exercise of the peremptory challenge, by contrast, represents the discrete decision, made by one of two or more opposed litigants in the trial phase of our adversary system of justice, that the challenged venireperson will likely be more unfavorable to that litigant in that particular case than others on the same venire.
 " 'Thus, excluding a particular cognizable group from all venire pools is stigmatizing and discriminatory in several interrelated ways that the peremptory challenge is not. The former singles out the excluded group, while individuals of all groups are equally subject to peremptory challenge on any basis, including their group affiliation. Further, venire-pool exclusion bespeaks a priori across-the-board unfitness, while peremptory-strike exclusion merely suggests potential partiality in a particular isolated case. Exclusion from venires focuses on the inherent attributes of the excluded group and infers its inferiority, but the peremptory does not. To suggest that a particular race is unfit to judge in any case necessarily *Page 353 
is racially insulting. To suggest that each race may have its own special concerns, or even may tend to favor its own, is not.'
 "United States v. Leslie, 783 F.2d 541, 554 (5th Cir. 1986) (en banc), quoted at 476 U.S. 79, 122-23, 106 S.Ct. 1712, 173637, 90 L.Ed.2d 69
(1986).
 "Finally, I am unable to avoid the conclusion that first the Supreme Court, with its decision in Batson, and now our panel, with today's case, have leapt halfway across a logical chasm and come to rest in midair. The essence of a peremptory challenge is that it need not be excused or justified; indeed, the challenger himself may have
no articulable reason for his action. Every lawyer who has tried cases for any length of time knows this, would be forced to admit, if pressed, that on occasion he has exercised strikes on no firmer basis than 'I didn't like the way he looked at my client' or 'Her tone of voice didn't sound right.' Hunches, implicit feelings, even crochets — some always strike barbers, or housepainters, or ironworkers — are the stuff of peremptory challenges. But who would credit such a reason, if advanced as the basis for challenging a member of an ethnic minority? Nor does equal opportunity for members of the various ethnic groups to serve as jurors result from today's decision, rather the contrary; for counsel may well think twice about lodging a challenge for which he must possess (or invent) suitable, rational reasons, as opposed to one for which he need produce none.
 "What remains after today's holding is not the peremptory challenge which our procedure has known for decades — or not one which can be freely exercised against all jurors in all cases, at any rate. Justice Marshall would dispense with strikes entirely, and perhaps this will be the final outcome. Batson, 476 U.S. at 106-08, 106 S.Ct. at 1728-29 (Marshall, J., concurring). In this much at least he is surely correct, that we must go on or backward; to stay here is to rest content with a strange procedural creature indeed: a challenge for semi-cause, exercisable differentially as to jurors depending on how the ethnic group to which they belong correlates with that of the striker's client — a skewed and curious device, exercisable without giving reasons in some cases but not in others, all depending on race."
I respectfully dissent, because the decision today will impair severely the utility of a procedural device whose underlying justification — the community's and the litigants' acceptance of a jury as "a good and proper mode of deciding matters" — is, in my opinion, desperately needed today.
MADDOX and SHORES, JJ., concur.
[4] To exclude means "to bar from participation, enjoyment, consideration, or inclusion." Webster's at 793.